Rosalind M. Lee (OSB 055566)
ROSALIND MANSON LEE, LLC.
474 Willamette St., Ste 302.
Eugene, OR 97401
Tel: (541) 485-5110
Fax: (541) 485-5111
Email: ros@mansonlee.com

Of Attorneys for Defendant
JACOB MICHAEL GAINES

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:20-CR-223-IM |
| Plaintiff | ) | |
| | ) | DEFENDANT'S REPLY TO GOVERNMENT'S |
| v. | ) | MOTION FOR PRETRIAL RELEASE |
| JACOB MICHAEL GAINES, | ) | |
| | ) | ORAL ARGUMENT REQUESTED |
| Defendant | ) | |

### I.  Introduction

Defendant Jacob Gaines seeks review of Judge Mosman's detention order, which established conditions that would make it possible for Mr. Gaines to be released pretrial.[1]

---

[1] The government argues that the standard of review is *de novo*. *See* Government's Response to Motion for Release Pending Trial [ECF 29] at 2 *citing United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990) [hereinafter "Government's Response."]. *Koenig* holds that *de novo* is the appropriate standard of review where the district court is reviewing the release decision of a magistrate judge pursuant to 18 U.S.C. section 3145(b). *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). Here, the release order at issue was issued by Judge Mosman, who, of course, is an Article III judge.

*United States v Jacob Michael Gaines.* No. 3:20-cr-00223 IM
Reply to Government's Response to
Defendant's Motion for Pretrial Release
Page 1 of 5

Now that Mr. Gaines has met the conditions set by Judge Mosman, and that living in the bus is no longer a possibility, releasing Mr. Gaines to residential treatment is the least restrictive combination of conditions that will reasonably assure that Mr. Gaines will appear in court and ensure the safety of the community.  *See* 18 U.S.C. §3142(c)(1)(B).

## II.      Strength of the Evidence[2]

At the hearing on this motion, the defense expects that the government will play one video of the incident that is the basis of the charge against Mr. Gaines.  The defense has received two videos from the government in discovery. One video discovery shows that Mr. Gaines did not bring a hammer, or any weapon, with him that night. *See* GAINES_0000129.  Rather, this video shows people milling about the streets around the courthouse. *Id*. The crowd is not particularly dense or rowdy.  *Id*.  There is no evidence of protesters using mortars, baseball bats, high intensity lasers, rocks, bottles, or balloons filled with paint.  *See* Government's Response at 4.  Mr. Gaines is leaning against plywood sheeting on the side of the courthouse, slapping the sheeting with his hand and his fist.  Sometimes there are one or two others with him.  At one point he steps away from the building for a few minutes.  Then he returns to leaning against the building and slapping the plywood.  Another person walks up to him, hands him the hammer, and walks away.  Mr. Gaines then starts striking the door with the hammer.

Another video received in discovery reveals that less than 20 seconds elapse from the time the agents step through the plywood door until Mr. Gaines is placed under arrest. *See* GAINES_0000029.  The incident is very short and ends with Mr. Gaines being maced and taken into custody.  The deputy was not injured.  There is no evidence that Mr. Gaines resisted arrest or was not compliant during the booking process.  Indeed, when asked, Mr. Gaines provided his name, social security number and date of birth.  GAINES_0000017.

---

[2] In considering pretrial release, "[t]he weight of the evidence is the least important of the various factors."  *United States v. Motamendi*, 767 F.2d 1403. 1408 (9th Cir. 1985).

*United States v Jacob Michael Gaines.* No. 3:20-cr-00223 IM
Reply to Government's Response to
Defendant's Motion for Pretrial Release
Page 2 of 5

The defense has not received in discovery any video from the cameras at the federal courthouse, or any audio that confirms what Mr. Gaines is alleged to have said while leaning against the plywood. It is unknown to the defense whether any of the agents were wearing body cameras or microphones.

### III.    Risk to Public Safety

The government argues, without attribution, that Mr. Gaines has "anger episodes stemming from ADHD." Government Response at 7. The government further describes Mr. Gaines as "an angry man who abuses alcohol and controlled substances while having access to firearms and a sledgehammer. He becomes volatile and uncontrollable." *Id*. at 8.

Mr. Gaines is 23 years old, a high school graduate, and has no criminal history. He is married to his high school sweetheart. He has no history of violence. According to Dr. Guyton, he does not meet diagnostic criteria for a personality disorder. Guyton Report at 14. He has had excellent behavior while in custody, and, while at Inverness Jail, was housed in the treatment dorm. He is taking prescribed antidepressants and antianxiety medication. Dr. Guyton observed that during her meetings with Mr. Gaines, he "exhibited good interpersonal boundaries in that he made no personal inquiries or observations of me and did not use coarse language. He maintained emotional and behavioral control throughout our interview." Guyton Report at 9.

Allowing Mr. Gaines to participate in residential treatment will not risk public safety. He will be living in a structured environment. He will be supervised and accountable for his behavior. The government has not met its burden that Mr. Gaines will be a threat to public safety if in residential treatment.

//
//
//

*United States v Jacob Michael Gaines.* No. 3:20-cr-00223 IM
Reply to Government's Response to
Defendant's Motion for Pretrial Release
Page 3 of 5

### IV.     Flight

The defense has addressed Judge Mosman's concerns regarding flight risk.  Mr. Gaines is seeking release to residential drug and alcohol treatment, not release to his former residence, the converted school bus.  He has participated in 23.5 hours of treatment readiness at Inverness Jail.  Residential treatment will provide a place for him to live where he will be supervised and accountable for his whereabouts and his behavior.  Pretrial services contracts with the program, Volunteers of America, and will supervise Mr. Gaines while he is there.

The government seems to argue that Mr. Gaines is not suitable for residential treatment, because he minimized his drug and alcohol use when first asked.  Government Response at 10.  This dynamic is very common among addicts, especially young ones.  No one wants to admit to having a problem.  But, notably, once Mr. Gaines was moved to the treatment dorm, and he began engaging with the services offered by VOA at Inverness Jail, he became more introspective about his drug and alcohol use.  Indeed, Dr. Guyton noted that Mr. Gaines had changed dorms between her first and second interviews with him.  *See* Guyton Report at 9.

As the court is aware, forensic psychologists are trained to detect malingering and deception.  Had Dr. Guyton perceived that Mr. Gaines was being dishonest or manipulative, she would have included that in her report.  There are no qualifications to her diagnoses regarding Mr. Gaines, nor are there any qualifications regarding her recommendation for residential treatment.

Finally, the government argues that Mr. Gaines's circumstances have not improved since the hearing in front of Judge Mosman: "he has no job, no resources, and lacks any significant ties to the community."  Government's Response at 11.  Mr. Gaines has been in jail, so, of course, he could not obtain employment.  Mr. Gaines is poor, that is true.  He has been poor his entire life.  Being poor does not make one more prone to crime or less likely to follow through on one's

*United States v Jacob Michael Gaines.* No. 3:20-cr-00223 IM
Reply to Government's Response to
Defendant's Motion for Pretrial Release
Page 4 of 5

obligations.  Mr. Gaines has increased his contacts with the community, which is almost impossible to do from jail: he has established a relationship with Volunteers of America by participating in their treatment readiness program.   In addition, Mr. Gaines's wife still lives and works in the community.³

Mr. Gaines has no history of failing to appear or failing to comply with court directives.  The government has not met its burden of proof that Mr. Gaines is a flight risk.

### V.     Conclusion

For the above-stated reasons, and for the reasons stated in defendant's prior pleadings on the issue of release, the defense respectfully requests that Mr. Gaines be released to residential treatment.

DATED: November 10, 2020			Respectfully Submitted,

						ROSALIND MANSON LEE, LLC


						By:	/s/ Rosalind M. Lee
							Rosalind M. Lee
							Of Attorneys for Defendant Jacob Gaines

---

³ Mrs. Gaines does not live in a motel.  *See* Government Response at 11.  She rents a room in a house shared with others.  This type of living situation is very common among young adults.

*United States v Jacob Michael Gaines.* No. 3:20-cr-00223 IM
Reply to Government's Response to
Defendant's Motion for Pretrial Release
Page 5 of 5