SCOTT ERIK ASPHAUG, OSB#833674
Acting United States Attorney
District of Oregon
**CHRISTOPHER CARDANI**
Christopher.Cardani@usdoj.gov
**MEREDITH BATEMAN, OSB #192273**
Meredith.Bateman@usdoj.gov
Assistant United States Attorneys
1000 SW Third Ave., Suite 600
Portland, OR  97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:20-cr-00223-IM |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JACOB MICHAEL GAINES,** | |
| **Defendant.** | |

The United States of America submits this memorandum containing its sentencing recommendation for defendant Jacob Michael Gaines.

In the early morning hours of Saturday, July 11, 2020, defendant attempted to forcibly break into a closed federal building by striking a barricaded door with a four-pound hammer. After defendant successfully pierced the door, a team of Deputy United States Marshals attempted to exit the building to prevent defendant from trespassing and causing further damage. Defendant attacked the lead deputy, repeatedly striking him with the four-pound hammer.  The deputies eventually subdued and arrested defendant, who, pursuant to a plea agreement, pleaded guilty to one count of aggravated assault of a federal law enforcement officer.  There are no

disputed legal or sentencing guidelines matters.  The only issue for the Court is the appropriate sentence under 18 U.S.C. §3553(a).  For reasons set forth below, this Court should impose a sentence of 37 months in prison.

A.      **The Charges and Pretrial Activity**

Defendant was charged in a one-count Indictment with forcibly assaulting a Deputy United States Marshal (identified in the Indictment as "Adult Victim 1") with a deadly and dangerous weapon while the deputy was engaged in the performance of official duties, in violation of 18 U.S.C. § 111(a)(1) and (b).  This Court ordered defendant detained pending trial as a danger to the community and a risk of flight, an order which was later affirmed by the Ninth Circuit.  Defendant has remained in custody since his arrest.

B.      **The Plea Agreement & Sentencing Guidelines Computations**

As noted above, defendant pleaded guilty pursuant to a plea agreement.  For purposes of the sentencing guidelines, the parties jointly agree with the following calculations, and the government recommends a 2-level variance under 18 U.S.C. § 3553(a):

| Sentencing Guideline Calculations | |
|---|---|
| Base Offense Level—USSG § 2A2.2(a) | 14 |
| Convicted Under 18 U.S.C. §111(b) —USSG § 2A2.2(b)(7) | +2 |
| Dangerous Weapon Used—USSG § 2A2.2(b)(2) | +4 |
| Creating Substantial Risk of Serious Bodily Injury to Known Law Enforcement Officer—USSG § 3A1.2(c)(1) | +6 |
| Acceptance of Responsibility—USSG § 3E1.1 | -3 |
| **Adjusted Offense Level (Resulting Guideline Range)** | **23 (46-57 months)** |
| Recommended Variance—18 U.S.C. § 3553(a) | -2 |
| **Defendant's Total Offense Level (Advisory Guideline Range)** | **21 (37-46 months)** |

These sentencing guidelines calculations are consistent with the presentence investigation report. (PSR at ¶19-29).  If the Court accepts these joint recommendations, and the government's recommendation for a 2-level variance, defendant's final adjusted offense level is

21. With no criminal history points, defendant's advisory sentencing range is 37-46 months. Pursuant to the plea agreement, the government recommends a low-end sentence of 37-months of imprisonment, and defendant is free to argue for a lower sentence.

C.     **The Offense Conduct**

Beginning in May 2020, protestors in downtown Portland, Oregon regularly gathered to engage in large demonstrations. While most of the protest activity was peaceful during daytime hours, some used the façade of protest and the cover of night to engage in riotous criminal activity in the forms of arson, vandalism, assaults, looting, property destruction, launching aerial mortars, throwing bottles and rocks, and shining high intensity lasers into law enforcement officers' eyes. This activity continued for many weeks. The Mark O. Hatfield United States Courthouse (USCH) is located in downtown Portland and was the target of some of this criminal activity. Criminal activity at the USCH included the destruction of large glass windows at street level and as high as the eighth floor of the building. Offenders launched commercial grade firework mortars into the lobby and upper floors of the USCH. One mortar struck and injured a federal law enforcement officer. Glass doors at the entryways to the USCH were destroyed. One of those doors, shown below, was located on the south side of the USCH, on Main Street.

Due to the extensive damage to the facility, plywood barricades were erected around the entry ways to the USCH, including at the Main Street door. This barricade had a wooden door, which, during operating hours, employees and others used to enter and exit the building. Once the USCH was closed, the plywood door was shut and reinforced with additional protective bars.

/ / /

A team of Deputy United States Marshals was tasked with protecting the USCH from being breached.  On Friday, July 10, 2020, their job was to remain inside the USCH, but be on alert to respond to attacks on the USCH, and especially to guard against attempts to breach and illegally trespass into the USCH.  This type of response was necessary, as rioters had previously breached and set fires inside the Multnomah County Detention Center (MCDC), which is located directly across the street from the USCH.

On Saturday, July 11, 2020, at about 1:00 a.m., defendant Gaines approached the plywood door at the south side of the USCH.  He beat on the door with his fists for some time but was unable to penetrate the barricaded structure.  Observing Gaines' efforts to breach the USCH, the USM team assembled just inside of the USCH, opposite Gaines.  Supervisors instructed the USM team not to exit the USCH unless the building was breached.  Despite Gaines' repeated pounding on the door, the USM team stayed inside the building.

After Gaines tired from trying to beat his way in, an unknown confederate gave Gaines a four-pound blacksmith hammer, shown below, to use on the door.

  

**Government's Sentencing Memorandum**                                                                 **Page 4**

Emboldened with this device, Gaines started beating on the same door with it in an attempt to break his way in. During his renewed attack on the USCH, Gaines saw through a small crack in the barricade that the USM team was on the other side of the door. All that separated them was a piece of reinforced plywood. Supervisors again instructed the USM team not to deploy unless there was a physical breach. Exiting the USCH during riotous activity was dangerous, even for well-equipped law enforcement officers. On prior evenings throughout the summer, agitators baited law enforcement to exit the USCH, at which point officers were often attacked with firework mortars, laser strikes, bottles, and other objects. Leaving the USCH was considered a policy of last resort.

Gaines cursed at the USM team while repeatedly pounding on the door with the hammer: *"I can see you motherfuckers through the cracks;" "You motherfuckers are gonna have to kill me."* Yet, the USM team still refrained from exiting the USCH. After several more whacks, Gaines finally succeeded when one of his hammer strikes broke open a hole in the plywood door, which is shown by the arrow below.



**Government's Sentencing Memorandum**                                                                 **Page 5**

In response to this physical breach, at approximately 1:15 a.m. on Saturday, July 11, 2020, the USM team was instructed to deploy by exiting the USCH to prevent a trespass and further damage to the facility. Gaines, who is 6'2" tall and weighs 320 pounds, used his considerable heft to lean against the plywood door to prevent the USM team from exiting. The team pushed against the door, but had trouble opening it because of Gaines' forcible resistance. As the USM team was attempting to open the door, Gaines held the hammer over his head, lying in wait for them to exit. As seen in the video described below, he held the deadly weapon over his head for about ten seconds, ready to attack the Deputy U.S. Marshals, while continuing to scream at them that they would have to kill him.

The USM team finally pushed with enough force that the door swung open. The first Deputy U.S. Marshal through was a local deputy and the head of the team. As he moved outside, Gaines immediately swung the hammer at the deputy's head and upper body. Some of his swings met their mark. The victim deputy was first hit in the shoulder, and then in the back. As the victim deputy tried to restrain him, Gaines broke away, backed up, and launched another strike. Taking a full overhead swing with the four-pound hammer, Gaines hit the victim deputy, striking him in the back of the head and upper back.

After considerable effort, the USM team was able to subdue Gaines by taking him to the ground and restraining him with plastic zip ties. The USM team took control of the area and brought Gaines into the USCH, where he was arrested. Some onlookers present at the scene recorded Gaines' attack and posted videos on Twitter. One of them can be found here, which is a link that was active as of the date of this memorandum:

https://twitter.com/i/status/1282062863268372480

The FBI later took this video and slowed Gaines' attack on the victim Deputy U.S. Marshal to 20% of its actual speed.[1]  These videos clearly reflect Gaines' intent to injure the Deputy U.S. Marshal.  Gaines was not defending himself—he was the angry aggressor, attempting to seriously hurt a federal law enforcement officer.  Had it not been for the protective gear he was wearing – body armor and a helmet – there is no doubt the victim deputy would have sustained serious, perhaps even fatal, injuries from the four-pound hammer blows Gaines inflicted.

**D.      History and Characteristics of the Defendant**

Little is known about defendant, and what brought him to the point of assaulting a federal law enforcement officer with a hammer while attempting to trespass into a closed federal building during a riot.  He has no known political associations or associations with groups engaging in anti-government behavior and has no criminal history.  Records indicate that this was his first arrest.

From information contained in the PSR, and a defense-sponsored forensic report done by Dr. Michelle Guyton, we know the following.  Defendant is from Texas but resided with his father in California until he turned nineteen.  In May 2019, Gaines moved to Bend, Oregon for a few months, returned to Texas until May 2020, came back to Bend for a month, but then relocated to Portland.  At the time of his arrest, defendant and his wife lived nomadically in a bus.  From May 2019 until he was arrested, they moved back and forth from Texas, Bend, and Portland.  Defendant is a self-described transient and at the time of his arrest he had been parking his bus on a street in North Portland.  Defendant had multiple firearms in his bus: two handguns

---

[1] A copy of the twitter video and the same video in a slower speed have been submitted to the Court as Exhibits 1 and 2.  They will be played at sentencing.

and a shotgun. He is unemployed and suffers from mental health issues, including anger episodes stemming from ADHD. Shortly before his arrest he quit two prior jobs after working there for only a few weeks. Other than his wife, he has no family ties in Oregon. Defendant acknowledged daily use of marijuana and has experimented with LSD and hallucinogenic mushrooms. His wife stated that defendant drinks alcohol to excess.

Dr. Guyton reports interviewing defendant on two occasions. Her diagnosis is that defendant suffers from Major Depressive Disorder, ADHD, and Severe Substance Abuse Disorders Related to Alcohol, Cannabis, and Hallucinogens. (Guyton Report at 2). She recommends mental health and residential drug treatment due to "the severity of his polysubstance use and his present inability to achieve or maintain sobriety in the community."

Dr. Guyton's appears to base her diagnosis largely on statements defendant made to her during her second interview with him. By contrast, when he was interviewed by the pretrial services officer shortly after he was arrested, defendant reported the following:

*Alcohol* – Defendant stated he rarely consumes alcohol and denies any history of alcohol abuse. Defendant's wife reported he occasionally consumes alcohol but drinks to excess when he does.

*Cannabinoids* – Defendant reported daily use during the four months prior to his arrest. His wife stated he has been a daily user since high school.

*Hallucinogens* – Defendant said he experimented with LSD and mushrooms at age 22 with "no further use since."

Dr. Guyton reports that defendant minimized his use of alcohol and hallucinogens during their first meeting but acknowledged heavier use during the second. Defendant's statements to

pretrial and Dr. Guyton during the first meeting about limited drug and alcohol abuse were markedly different than what he said to her during their second meeting, after he had spent almost two months in jail.

While defendant's sentencing memorandum reports that defendant was "heavily drunk" during the assault and has "little memory of the event," there is no evidence that defendant consumed alcohol in the hours leading up to his arrest. Defendant only reported that he had ingested marijuana sometime prior to his arrest. Additionally, defendant reported never having experienced serious withdrawal symptoms from drugs or alcohol and he was described as being "polite and cooperative" after his arrest. Other than defense's claims in the sentencing memorandum, there are no indications that Gaines was inebriated or under the influence of drugs during the assault.

Regardless of Gaines' motivation or his potential use of alcohol or drugs, the offense conduct is severe. He used a four-pound sledgehammer to attempt to destroy a plywood barricade and trespass into a closed federal courthouse during a protest. He challenged a team of Deputy U.S. Marshals to exit the building and said they would have to kill him. When they did exit, he used the hammer to commit a vicious assault that could have killed the victim deputy.

In addition to considering the seriousness of the offense and history and characteristics of the defendant, 18 U.S.C. § 3553(a) requires an examination of other sentencing factors, including the need to provide adequate deterrence to criminal conduct. Gaines' attack in this case was one of the most serious crimes prosecuted during the 2020 Portland riots. The United States' recommended prison sentence is warranted to help deter others from assaulting law enforcement officers and engaging in other serious criminal activities under the banner of protest activity.

The presentence report recommends as special conditions of supervised release that defendant participate in mental health, and substance/alcohol abuse treatment. These appear appropriate based on defendant's background. He can continue to receive such treatment in prison and continue them while on supervised release.

E.   Conclusion

This Court should sentence defendant to 37-months in prison, followed by a three-year term of supervised release, consistent with the terms recommended in the presentence report.

Dated: December 8, 2021                                   Respectfully submitted,

SCOTT ERIK ASPHAUG
Acting United States Attorney

*s/Christopher Cardani*
CHRISTOPHER CARDANI
Assistant United States Attorney

*s/Meredith Bateman*
MEREDITH BATEMAN, OSB #192273
Assistant United States Attorney